IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | |
|---|---|
| FRANK LAWRENCE, * | |
| #07934-20 * | |
| * | |
| Plaintiff, * | |
| v. * | No. 4:20CV01363-JJV |
| * | |
| ARAMARK, *et al*. * | |
| * | |
| Defendants. * | |

**MEMORANDUM AND ORDER**

**I.   INTRODUCTION**

Frank Lawrence ("Plaintiff"), incarcerated at Pulaski County Detention Center, brought this action pursuant to 42 U.S.C. § 1983 alleging Defendant Musaddiq violated his federally-protected rights while Plaintiff was in custody at the Detention Center.[1]  (Doc. Nos. 2, 9). Defendant Musaddiq has filed a Motion for Summary Judgment arguing Plaintiff failed to exhaust his administrative remedies.  (Doc. Nos. 18-20.)  Plaintiff has responded (Doc. No. 25); this matter is now ripe for a decision.  For the reasons set out below, Defendant's Motion (Doc. No. 18) is GRANTED.

**II.   BACKGROUND**

Plaintiff alleges that since he has been at the Pulaski County Detention Center, Defendant Musaddiq has allowed pretrial detainees to purchase tobacco and smoke, thus exposing Plaintiff to second-hand smoke and the risks associated with it.  (Doc. No. 9 at 4.)  Plaintiff asserts Defendant Musaddiq has the authority to ban the purchase of tobacco by inmates, but Defendant

---

[1] Sergeant Musaddiq is the only Defendant remaining in this case.  Plaintiff's claims against Defendants Aramark, Higgins, and Does have been dismissed.  (Doc. No. 10.)

Musaddiq is willfully indifferent and has not done so.  (*Id*.)  Plaintiff seeks damages and injunctive relief.  (*Id*. at 5.)

### III.     SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]"  Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.  *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).  The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial.  *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).  The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.  *Id.*  (citations omitted).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case.  *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012).  Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment.  *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

IV.     ANALYSIS

The Prison Litigation Reform Act ("PLRA") requires an inmate to exhaust available prison grievance procedures before filing suit in federal court.  *See* 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007); *Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002) (per curiam). Exhaustion under the PLRA is mandatory.  *Bock*, 549 U.S. at 211.  "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself."  *Id.* at 218 (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). Compliance with a prison's grievance procedures is, therefore, all that is required by the PLRA to properly exhaust.  *Id.*  Thus, the question as to whether an inmate has properly exhausted administrative remedies will depend on the specifics of that particular prison's grievance policy. *See id*.

The Pulaski County Detention Center had in place a grievance procedure that, under the PLRA, Plaintiff was required to exhaust before filing suit.  (Doc. No. 20 at 4-5; Doc. No. 20-1 at 2-3; Doc. No. 20-5.)  The grievance procedure gave an inmate the opportunity to submit a written complaint about "actions taken by staff or other inmates that have the effect of depriving the inmate of a right, service or privilege; allegations of abuse, neglect, or mistreatment by staff or other inmates; and any other matter the inmate believes to be illegal, a violation of department rules and regulations, or unconstitutional treatment or condition."  (Doc. No. 20-5 at 1-2.)  Grievances must be filed within 15 days of the incident giving rise to the grievance.  (*Id*. at 4.)  Inmates should explain the problem grieved "as briefly and clearly as possible," and each grievance should address only one problem.  (*Id*.)  Responses to grievances generally are provided within ten working days. (*Id*. at 6.)  If the inmate is not satisfied with the response, he or she may appeal within ten working

days.  (*Id*. at 7.)  The Chief of Detention, or his or her designee, will respond to the appeal in writing within five working days, which is the final level of the appeal process.  (*Id*.)

Plaintiff submitted approximately 179 grievances and requests between August 4, 2020, and January 31, 2021.  (Doc. No. 20-3.)  He also submitted approximately 101 medical requests during that same period.  (Doc. No. 20-4.)

I have reviewed the grievances and requests Plaintiff submitted.  Several mention Defendant Musaddiq, but not in a way that would put Detention Center officials on notice of Plaintiff's claims in this case.  For example, a September 25, 2020 grievance reads:

> Sgt. Mossadiq asked me to request his contact from one of the desk officers. This request is to follow up on gaining access to all of my kiosk requests to get grievances for health care. Of course the desk officers refuse to honor his request. Ms. Henry acts pissed off at the planet as usual. Since printed grievance forms are no longer used, this data needs to be downloaded into a WORD file or whatever Inmate.com uses. I need printed copies of each and every kiosk transmission for grievances for all matter except notary and chaplin. I need these downloaded (according to Sgt. Massodiq) from Inmate.com I need this data downloaded from my file as required to file a 1983 federal lawsuit. Please honor both requests or let me know of your refusal.
> Frank Lawrence.
> Thank you.
> I've also requested documentation from Inmate finance regarding providing me with an account of all deposits that have been made to my inmate commissary account since my detainment began 7/16/2020. This is also needed for 1983 filing.

(Doc. No. 20-3 at 80.)

Plaintiff filed two grievances in October mentioning Defendant Musaddiq, but those grievances had to do with correspondence Plaintiff made to any department at the Detention Center, not with second-hand smoke or its effects.  (*Id*. at 104, 125.)  Plaintiff sought the address of Aramark in an October 10, 2020 grievance, but he did not explain why.  (*Id*. at 119.)

On October 17, 2020, Plaintiff filed a request concerning mental health issues that alleged the Detention Center "doesn't care about the health and well being of their detainee's, as much as

they care about peddling known carcinogens to adults and children," among other things.  (Doc. No. 20-4 at 68.)  While this request raises the issue of cigarettes and carcinogens, it does not contain enough information to put officials on notice of Plaintiff's claims in this case.  No other grievance or request Plaintiff filed was on point to his claims here.

In his Response, Plaintiff explains he "currently has grievances filed on March 15th and March 16th after [Defendant] Musaddiq retaliated against the Plaintiff and returned him to the "D" unit of the [Detention Center] where the living environment is unconstitutional."  (Doc. No. 25 at 1.)  Plaintiff further explains "[t]he administrative remedies are still being exhausted."  (*Id*.)

Plaintiff filed suit on October 16, 2020, long before his March 15 and March 16 grievances.  Further, Plaintiff himself acknowledges his administrative remedies are still being exhausted.  Importantly, Plaintiff does not contest any undisputed material fact set out by Defendant Musaddiq in a separate statement of fact or otherwise in his Response.  And he has not identified any grievance in the record that would exhaust his claims.  Accordingly, Defendant Musaddiq's material facts not in dispute (Doc. No. 20) are deemed admitted.  Local Rule 56.1(c); FED. R. CIV. P. 56(e)(2).  Considering the record before me, I find Plaintiff has not exhausted his administrative remedies as to his claims against Defendant Musaddiq.

I realize Plaintiff may perceive my exhaustion findings as an unfairly technical "gotcha" mechanism to keep him out of court. To the contrary, the exhaustion requirement plays a critical role in the remedy process. The Eighth Circuit has explained this important role as follows:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court,

5

adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Johnson v. Jones,* 340 F.3d 624, 626-27 (8th Cir. 2003); *see also Woodford,* 548 U.S. at 88 ("Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures").

As explained above, the PLRA requires exhaustion. Where, as here, Defendant Musaddiq has moved for summary judgment, Plaintiff "was required 'to discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact.'" *Fatemi v. White*, 775 F.3d 1022, 1046 (8th Cir. 2015) (internal citation omitted). The evidence shows Plaintiff failed to exhaust his § 1983 claims against Defendant Musaddiq. Because Plaintiff has not come forward with proof that he did, in fact, exhaust those claims before he sued Defendant Musaddiq, summary judgment in Defendant Musaddiq's favor is appropriate.

**V.    CONCLUSION**

IT IS THEREFORE ORDERED that:

1.    Defendant Musaddiq's Motion for Summary Judgment (Doc. No. 18) is GRANTED.

2.    This case is DISMISSED without prejudice.

3.    The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from this Order and the accompanying Judgment would not be taken in good faith.

Dated this 25th day of March 2021.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE